No. 812

First Circuit

BROWN v. BROWN ET AL.

(June 16, 1931. Opinion and Decree.)

C. V. Pattison, of Lake Charles, attorney for plaintiff, appellant.

Moss & Siess, of Lake Charles, attorneys for defendants, appellees.

LeBLANC, J.   Arthur Brown, 'the plaintiff, was employed by Newton Brown, his father, who is one of the defendants herein, to work as a laborer on a rice farm in Calcasieu parish.   The farm belonged to Seaman A. Mayo, the other defendant, who had leased it to Newton Brown in consideration of a one-fifth interest in the crop.

Plaintiff's suit is for wages for forty-eight days at $1.50 per day and seventy-two days at $3 making a total of $288.

He alleges that the forty-eight days were included in that period of time between February 17 and August 15, 1930, and the seventy-two days between August 15 and November 14, 1930.   The increase in wages came during the latter part, or the harvest season, and as he explains in his testimony, was due to the fact that he was then employed in "running the machines—the separator, and tractor and thresher." He claims that he never was paid anything at all and that he is entitled to the full amount he prays judgment for with legal interest from judicial demand.

The defendant Newton Brown made no appearance in defense of the suit.   Mayo answered, denying any indebtedness, and alleging that all labor incurred in the making and harvesting of the crop had been paid.   He further averred in his answer that when this suit was filed, he requested his co-defendant Brown to join him in defending it, but that he refused to do so; and, so believing, he alleges that the plaintiff has been paid all wages due him and that he and his father are in collusion in this proceeding.   He asks that plaintiff's demand as against Brown be rejected as well as against him, for the reason that Brown is now insolvent, and as he has indorsed some of his notes, a judgment against either of them will have the same effect as to both.

Following the taking of the testimony, we find the following statement in the

note of evidence as emanating from the trial court:

"Gentlemen, I believe those two men tried to impose on their counsel, and tried to impose on the Court. I don't believe a word either of them says, and I believe Mr. Mayo has paid this man for all the work he did on the farm, and his claim is rejected."

In the written judgment signed by him, the district judge states that he is "of the opinion that the defendant (here he evidently meant to say plaintiff) and his father, Newton Brown, entered into a conspiracy to deprive S. A. Mayo of a part of his rice and that they committed perjury in furtherance of their conspiracy."

From that judgment against him, the plaintiff has appealed, but we note that his counsel makes no appearance on his behalf. Under circumstances such as we have them here, there is even a stronger presumption than the ordinary one of the correctness of the judgment.

The trial judge may appear a bit severe in his condemnation of the testimony of the plaintiff and his father, but, after having carefully gone over the record, we do not know but that was the proper thing for him to do and that they deserved the rebuke which he administered to them. The father especially, bent only on bolstering up a fictitious claim in favor of his son, appears in a most unfavorable light as a defendant and witness in a court of justice. He seemed even to have finally exasperated plaintiff's counsel, as we find the latter, at one time, taking him to task for "testifying to three or four different states of affairs" when they are on the same subject.

It would serve no useful purpose to go into a lengthy discussion of the testimony. Suffice it to say that it seems almost incredible that a laboring man, with apparently no other means of support, would have worked for seventy-two days without seeing to it that he was paid at least some of his wages, or that they would be secured to him in some way. The father's testimony in trying to maintain the claim is so vacillating as to be unworthy of serious consideration. He states that his son was not paid because whenever he asked Mayo for his money, the latter would tell him that money was short. When asked to fix any definite time when he was told that by Mayo, he at first says it was in October and then changes that to March or April. He admits that he was getting money to pay off everybody else, and when asked why he didn't pay his son with some of it, answers:

"He could kind of live and do without it, and the money being short, I held him out."

Defendant Mayo, on the other hand, swears that he never refused Newton Brown money to pay the laborers, and he is positive that Arthur Brown's name appeared on the pay rolls.

We have but little hesitancy in accepting the trial judge's appraisal of the entire case and in approving, as correct, his judgment rejecting plaintiff's demand as against both defendants.